Jesus Silva-Santiago *vs.* Commonwealth. No. 13-P-1192. May 22, 2014. *Erroneous Conviction.*

The plaintiff, whose conviction of murder in the first degree was reversed after several years of incarceration, appeals from the dismissal of his claim for damages against the Commonwealth pursuant to the "Compensation for Certain Erroneous Felony Convictions" statute, G. L. c. 258D, for failure to state a claim. We affirm.

*Background.* On June 16, 2006, the plaintiff, Jesus Silva-Santiago, was convicted of murder in the first degree in the June 28, 2003, shooting death of Eugene Monteiro, which took place in the parking lot of a bar. See *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 783-785 (2009).

On direct appeal, the Supreme Judicial Court rejected his appellate arguments. However, the court, pursuant to its supervisory powers under G. L. c. 278, § 33E, reviewed for errors not raised and reversed his conviction, holding that two statements made by the prosecutor during his closing argument, and the judge's failure to correct them, constituted reversible error. *Id.* at 805-810.

The first erroneous statement concerned the initial inability of the victim's

---

friends, who witnessed the shooting, to identify the defendant as the shooter when they had the opportunity to view him, and approximately forty-one others, in a secured area shortly after the shooting. *Id.* at 785-786, 806, 808-809. In his closing argument, the prosecutor, as to the nonidentification, told the jury:

> "Doesn't it make sense that maybe, just maybe, they weren't in a position, given their frame of minds, to calmly look around the bar that had about thirty-five, forty, forty-five people in it to try to make an identification? Doesn't it make sense that even if they did, even if they saw everybody in the bar and saw the shooter, they were maybe too scared to identify him, given what they had just seen?"

*Id.* at 806. Defense counsel objected to this argument, but the objection was overruled. *Ibid.* The court held that this was error because no evidence had been introduced that the friends had recognized the defendant as the shooter, but were so afraid or overwhelmed that they were less than candid with the police until they tentatively[1] identified him in a photographic array on July 7, 2003. *Id.* at 786-790, 808-809.

The second erroneous statement concerned the testimony of another witness, fifteen year old Tihani Pichardo. *Id.* at 787, 806-807. The prosecutor told the jury that Pichardo testified to standing in the doorway of the bar just prior to the shooting and seeing the defendant walk towards the parking lot where the shooting took place. *Id.* at 806. An objection was made to this argument as well, which was also overruled. *Ibid.* The court ruled that the statement regarding Pichardo's testimony contradicted the record. *Id.* at 807. In actuality, Pichardo's testimony had been that she saw the defendant in the parking lot ten to fifteen minutes before the shooting, and "that she did not see him among the group in the parking lot at the time of the shooting." *Ibid.*

As these preserved errors might have influenced the jury, the conviction was reversed. *Id.* at 808-810. In the subsequent retrial, the plaintiff was found not guilty.

In July, 2012, the plaintiff brought the present action for compensation based upon his incarceration. The Commonwealth successfully moved to dismiss the complaint, claiming that the plaintiff had failed to state a claim upon which relief could be granted. The plaintiff now appeals.

*Discussion.* A wrongfully imprisoned felon whose conviction has been reversed on appeal may, in certain circumstances, be eligible for compensation from the Commonwealth under G. L. c. 258D. A threshold question is whether the grounds for overturning the conviction rested "upon facts and circumstances probative of the proposition that the claimant did not commit the crime." *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. 466, 477 (2009), *S.C.*, 458 Mass. 354 (2010). There is relatively little case law on the issue.

The cases in which a plaintiff was permitted to proceed include *Drumgold* v. *Commonwealth*, 458 Mass. 367 (2010), and *Guzman* v. *Commonwealth*, 458

---

[1]One eyewitness stated that the photograph of the defendant looked similar to the shooter, but that he could not make a positive identification. *Id.* at 788. The second eyewitness identified a photograph of the defendant, although he stated that he had been unable to get a close look at the shooter's face. *Id.* at 789.

Mass. 354 (2010). In *Drumgold*, the court held that a reversal due to the omission of exculpatory credibility evidence may be probative of innocence. *Drumgold, supra* at 378. In that case, a woman who claimed to have witnessed Drumgold fleeing the scene of a fatal shooting was, at the time of the trial, and unknown to the defense, suffering impaired memory and perception due to the effects of terminal brain cancer. *Id.* at 372-373. Another eyewitness had been given inducements in exchange for his testimony inculpating Drumgold; this information also was not disclosed to the defense. *Id.* at 373-375. This testimony was the foundation of the Commonwealth's case, and its infirmities were not revealed at trial. The court ruled that "the fact finder was forestalled from making a fully informed decision as to [Drumgold's] guilt or innocence." *Id.* at 378.

In *Guzman, supra* at 363-364, Guzman's attorney at his criminal trial failed to call two witnesses who would have provided key exculpatory testimony. The primary evidence against Guzman was the testimony of two police officers who allegedly observed him selling cocaine to two buyers, Spencer and Logue. *Id.* at 363. Guzman, claiming misidentification, was fatally harmed when his attorney failed to call Spencer and Logue, who would have testified that Guzman was not the person who had sold them the drugs. *Ibid.* An evidentiary hearing on Guzman's motion for a new trial revealed that trial counsel previously had represented Spencer and wished to avoid the appearance of a conflict. *Ibid.* Trial counsel also successfully had moved to prevent the Commonwealth from calling Logue. *Id.* at 363 n.16. This constituted ineffective assistance of counsel. *Id.* at 363-364.

In Guzman's c. 258D action, the court ruled that the misidentification went to the heart of his guilt or innocence and that "[e]ssential to our analysis here is that counsel's ineffective assistance took the form of depriving Guzman of the introduction of evidence tending to establish his actual innocence." *Id.* at 365 n.20.

In contrast to these cases and outcomes stand two others. In *Irwin* v. *Commonwealth*, 465 Mass. 834, 838, 852 (2013), the prosecutor made improper reference to the defendant's prearrest silence during the Commonwealth's case-in-chief, cross-examination, and closing argument. In *Riley* v. *Commonwealth*, 82 Mass. App. Ct. 209, 216 (2012), this court held that while reversal resulted due to violations of *Bruton* v. *United States*, 391 U.S. 123 (1968), this was insufficient to establish a likelihood of innocence. "[T]he facts and circumstances justifying the reversal are the erroneous admission of additional evidence of guilt,[2] not the exclusion of evidence probative of innocence." *Riley, supra* at 215.

In examining these cases, it is clear that the introduction of prejudicial information was insufficient to support a claim for relief under c. 258D. Conversely, the withholding of exculpatory evidence resulted in a contrary

---

[2]The *Riley* court cited footnote 6 of *Guzman* in support of its ruling. 82 Mass. App. Ct. at 215. Footnote 6 detailed such instances and others where the errors "could 'well be consistent' " with innocence but did not tend to establish it, including the improper admission of a ballistics certificate in contravention of confrontation rights, the improper closure of a courtroom, the improper use of deoxyribonucleic acid (DNA) evidence, the improper use of *Bruton* evidence, improper closing argument, ineffective assistance of counsel by not requesting a relevant jury instruction, incorrect jury instructions on third prong malice, and the improper disallowance of a peremptory challenge. *Guzman*, 458 Mass. at 358 & n.6, quoting from *Guzman*, 74 Mass. App. Ct. at 477 (collecting cases).

conclusion as the jury were "forestalled from making a fully informed decision as to the defendant's guilt or innocence." *Drumgold*, 458 Mass. at 378.

This distinction is not a bright line, however, as indicated in *Irwin*,[3] which recognized that "in some circumstances, inclusion of false inculpatory evidence, such as deliberately perjured testimony by an arresting officer, could be a ground tending to establish innocence." *Irwin*, 465 Mass at 850-851. A close look at the reasons for the reversal of a conviction is thus warranted.[4]

In the case at bar, the plaintiff's conviction was overturned due to the impropriety of the prosecutor's closing argument, making it analogous to *Irwin* and the examples mentioned in footnote 6 of *Guzman*. While the misstatements here prejudiced the plaintiff, and indeed resulted in the reversal of his conviction, they did not "tend to establish [his] innocence." *Drumgold, supra* at 376, quoting from G. L. c. 258D, § 1(B)(ii). Unlike in *Drumgold* and in *Guzman*, the jurors here heard all of the evidence; nothing was kept from them. On these facts, c. 258D relief is not available, and the plaintiff's claim was properly dismissed.

*Judgment affirmed.*

*John A. Amabile* (*Erica Jacobsen* with him) for the plaintiff.

*Dennis N. D'Angelo*, Assistant Attorney General, for the Commonwealth.

---

[3]Accord *Guzman*, 458 Mass. at 358; *Riley*, 82 Mass. App. Ct. at 214, quoting from *Guzman, supra* at 362 ("The test . . . . requires us to look not only at the legal rationale for judicial relief but also at the 'facts and circumstances' on which the relief rests").

[4]Irwin was convicted of the indecent assault and battery of a six year old child. *Irwin, supra* at 835-838. His conviction was overturned due to the improper admission of his prearrest silence and the prosecutor's improper use of it as consciousness of guilt. *Id.* at 852. Irwin was not retried, with the Commonwealth filing a nolle prosequi. *Id.* at 838. In ruling that Irwin could not proceed on his c. 258D claim, the court wrote that "because the improperly admitted evidence was not probative and not relevant to establish any fact at trial, its exclusion also did not change the weight of the properly admitted evidence. . . . . [T]he exclusion of the improper evidence would not have tended to make it more likely that Irwin did not commit the offense charged." *Id.* at 854-855.